UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:08-CV-14-FL

| | |
|---|---|
| GLORIA REDMOND, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Gloria Redmond ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 4 February 2004 and 7 July 2003, respectively, alleging disability beginning 2 June 2003.[1] (R. 71-73, 497-500). Both claims were denied initially and upon reconsideration. (R. 32-48, 501-08). A hearing before the

---

[1] While the ALJ and the parties indicate 2 June 2003 as the beginning of Claimant's disabilities, Claimant amended her application on 18 February 2004 and indicated the beginning of her disability condition as 15 May 2003. (R. 19, 144).

Administrative Law Judge ("ALJ") was held on 15 December 2005, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 514-35). On 12 April 2006, the ALJ issued a decision denying Claimant's claims. (R. 16-30). On 7 December 2007, the Appeals Council denied Claimant's request for review. (R. 7-10). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

3

In this case, Claimant alleges the following errors by the ALJ: (1) failure to adequately explain his rationale concerning the severity findings regarding Claimant's impairments; (2) failure to give controlling weight to the opinion of Claimant's treating physician; (3) improper assessment of Claimant's credibility; and (4) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 21). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) lumbar spine disorder; (2) asthma; and (3) situational depression. *Id.* The ALJ also found Claimant had the following nonsevere impairments: (1) neck impairment; (2) migraine headache pain; and (3) dizziness. (R. 23). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> [C]laimant's depression results in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. There is no evidence that...[C]laimant has decompensated due to her mental impairment....

4

(R. 25). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] in a clean air environment without concentrated exposure to fumes, odors, dusts, gases and poor ventilation, that involves the occasional performance of climbing and balancing and does not involve more than simple, repetitive mental work tasks. (R. 26). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a supervisor, child care development teacher or mental health instructor. (R. 28). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant, a high school graduate, was forty-two years old and unemployed. (R. 28, 519). Claimant was last employed as a supervisor for a facility for mentally handicapped adults. (R. 518). Claimant's past work experience also includes employment as a child care development technician. (R. 532).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Claimant testified that she is unable to work due to asthma, blackout spells, pain associated with her neck, back and left side and hip, depression and inflammation of the lungs. (R. 522-25, 529). Claimant visits her doctor approximately three to four times a month for her asthma and uses an Advair pump. (R. 526-29). Due to her left hip and side pain, Claimant was prescribed a cane for balance approximately two years prior to the hearing. (R. 525, 530). Claimant experiences pain on the left side above her waist, as well as back pain, with standing or walking. (R. 525). Despite neck surgery, Claimant is unable to turn her neck to the right. (R. 526). Claimant takes Zoloft for depression and aspirin for pain. (R. 526-27). Claimant relies on her family for cooking and all manner of housework. (R. 528). Claimant no longer drives. (R. 531).

### III. Vocational Expert's Testimony at the Administrative Hearing

Sandra M. Wells-Brown, Ed.D., Certified Rehabilitation Counsel, testified as a VE at the administrative hearing. (R. 63, 531-33). After the VE's testimony regarding Claimant's past work experience (R. 532), the ALJ posed the following RFC:

> [C]laimant [can] perform simple, repetitive tasks. And...she may have some difficulting interacting with co-workers and the public, but she seems to be cognitively intact and could conceivably accept instructions from supervisors and deal with the stress encountered in a competitive work environment....[Claimant] would have some marginal difficulties working. And it's because of physical impairments she were (sic) limited to light work in a relatively clean environment, which did not require anything more than occasional climbing or balancing. Would there be any jobs that she would be considered capable of performing?

*Id.* The VE responded that Claimant could perform light, unskilled security positions generally, in addition to general clerk positions at the unskilled sedentary and light exertional levels. (R.

532-33). The VE explained that the above named positions are representative and not exhaustive and that they are consistent with the Dictionary of Occupational Titles. (R. 533).

## DISCUSSION

### I. The ALJ adequately explained his rationale concerning the severity findings regarding Claimant's impairments.

Claimant contends the "ALJ improperly reviewed the medical records and did not adequately explain the conclusions that were reached as to medical severity and the combination of medical problems which afflict [her]." Pl.'s Mem. at 1. Claimant contends further that the "ALJ's review of the records leaves out such information as would be contrary to the conclusions he made about her medical conditions." *Id.* at 4. The Court finds, however, that the ALJ summarized a substantial portion of Claimant's medical history in support of his step two finding.

    a.   *Lumbar Spine Disorder*

The ALJ supported his finding that Claimant's lumbar spine disorder constituted a severe impairment based on the following medical records: (1) January 2003 findings of Deborah Phillips, FNP-C with Kasselt Bone and Joint Center (R. 200-01); (2) February through December 2003 progress records of Claimant's primary care physicians at Kinston Community Health Care ("KCHC") (R. 235-53); (3) results of a June 2003 lumbar spine series and an August 2003 total body bone scan (R. 362, 364); (4) findings by Maqsood Ahmed, M.D., a state agency consultant (R. 165-69); (5) February 2004 findings by Leslie Reynolds, M.D., with Kinston Neuroscience (R. 263); and (6) the results of an August 2004 and November 2005 MRI of Claimant's lumbar spine (R. 325, 443). (R. 22-23). Citing the above records, the ALJ noted the lack of objective and neurological findings supporting Claimant's allegations (22, 167, 201, 237,

7

263) and the mild abnormal findings revealed by x-rays and MRI and CT scans (R. 22-23, 325, 364, 443). (R. 22-23). However, the ALJ acknowledged that Claimant's whole body bone scan revealed findings most consistent with Paget's disease. (R. 22, 362). Furthermore, the ALJ acknowledged Dr. Ahmed's physical examination findings, including Claimant's antalgic gait, her "give-away weakness of the left lower extremity," and her guarded range of motion of the lumbar spine. (R. 22, 167). However, the ALJ noted further Dr. Ahmed's assessment that Claimant demonstrated more pain behavior than the objective examination findings supported. *Id.* Accordingly, the Court finds no support for Claimant's contention that "the ALJ...[did not] actually review[] the complete medical information to see what was truly happening with [her lower back]." Pl.'s Mem. at 5.

    b.    *Asthma*

The ALJ supported his finding that Claimant's asthma constituted a severe impairment based on the following medical records: (1) normal chest x-rays in April and August 2004 and in January, February, March, October and November 2005 (R. 271, 379, 407, 409, 413, 439, 443, 456, 459, 485); (2) the normal findings of the October 2005 pulmonary function study (R. 445, 450-53); (3) February, April and December 2003 and March 2004 progress notes by Claimant's treating physicians at KCHC noting Claimant's lungs were clear to ausculation bilaterally, her wheezes had resolved, examination of her lungs revealed friction rub but normal respiratory sounds and her asthma was controlled with medication (R. 237, 245-46, 349); (4) the resolution of Claimant's bronchitis and bronchitis with bronchospasm in February and September 2005, respectively, with medication and rest. (R. 313). The ALJ noted further Dr. Ahmed's diagnosis that Claimant had moderate to severe asthma, controlled with medication and Claimant's

8

admissions to Dr. Ahmed that (1) inhalers and nebulizer treatment control her asthmatic symptoms and (2) she has smoked 2 ½ packs of cigarettes daily for the past thirteen years. (R. 22, 166-67).

    c. *Situational Depression*

In evaluating the severity of Claimant's depression, the ALJ cited the following medical records: (1) consultative psychiatric examinations performed by state agency psychiatrists Judith Yongue, M.D., and Daniel Bradford, M.D. (R. 170-72, 254-56); (2) a September 2005 notation on a discharge summary from Lenoir Memorial Hospital which indicated Claimant was psychiatrically intact (R. 490-91); (3) mental RFC assessments performed by and the psychiatric review technique forms ("PRTF") completed by state agency psychological consultants Arlene Cooke, Ph.D., and Oliver Mann, D.O. (R. 170-90, 282-98) and (4) Claimant's use of Zoloft (R. 146). (R. 24-25).

With respect to the examinations performed by Drs. Yongue and Bradford, the ALJ acknowledged that both diagnosed Claimant with major depressive disorder (R. 25-26, 172, 255). The ALJ noted that Claimant indicated to Dr. Yongue "that she was out of control of her life because she had no job or money and that her relationship with her teenaged son was in jeopardy because of her lack of control." (R. 24, 171). With respect to Dr. Bradford's evaluation, the ALJ noted that Claimant admitted to daily depression with the exception of Sundays (R. 24, 254). The ALJ noted further Dr. Bradford's prognosis that Claimant has mild depressive symptoms and his assessment that Claimant was capable of performing simple and repetitive tasks, cognitively intact and could deal with the stress encountered in a competitive work environment. (R. 25, 256). Based on the consultative examinations, the ALJ found Claimant's

9

depression "is characterized by psychomotor retardation, decreased energy, feelings of worthlessness and difficulty concentrating and thinking...." (R. 25, 171, 254). Finally, the ALJ summarized the findings of Drs. Cooke and Mann. In particular, while noting he concurred only in part with their PRTF evaluations, due to insufficient evidence, the ALJ nonetheless adopted their mental RFC assessments that Claimant's mental impairment limits her to remembering short, simple instructions, adapting to routine changes in the work place and performing unskilled work. (R. 26, 284-85).

Claimant faults the ALJ for characterizing her depression as "situational" versus "major depressive disorder" as diagnosed by Drs. Yongue and Bradford. *See* Pl's Mem. at 9; (R. 172, 255). However, Claimant does not indicate how the ALJ's classification of Claimant's mental impairment impacts any findings by the ALJ, including the steps two and three severity findings. Furthermore, the Court notes that the RFC assessments by Drs. Cooke and Mann, which the ALJ adopted, are based in part on the consultative examinations performed by Drs. Yongue and Bradford. (R. 176, 285).

d. *Non-severe impairments: neck, migraine headache pain, dizziness*

The ALJ supported his finding that Claimant's neck and migraine headache pain and dizziness constituted non-severe impairments based on diagnostic medical testing, the lack of subjective and objective evidence and the lack of significant limitations or restrictions noted by Claimant. (R. 24). With respect to Claimant's neck impairment, the ALJ acknowledged that Claimant underwent cervical fusion. (R. 24). However, the ALJ noted that a 2004 MRI revealed a stable appearance of post surgical changes and a 2005 x-ray revealed that the cervical bony structure was intact and mineralization was consistent with age. (R. 24, 257, 443). The ALJ

10

noted further that Claimant "has not indicated that she has pain in the neck or radicular pain in the upper extremities which would limit or restrict her full use of her hands, arms and shoulders." (R. 24).

As for Claimant's alleged syncopal episodes, the ALJ noted the lack of treatment records for dizziness with the exception of a 5 January 2004 progress note from Max Kasselt, M.D. (R. 24, 199). On that occasion, Claimant complained of shoulder pain due to a fall as a result of a syncopal episode and stated it was her third episode. *Id.* However, the alleged syncopal episodes are not explained by objective or diagnostic medical testing. In fact, a 4 June 2003 cerebral MRI, a 12 January 2004 brain CT scan and a 4 February 2004 electroencephalogram were all normal. (R. 22, 206, 260, 263). Moreover, all cardiac findings are consistently normal. (R. 24, 268-69, 444, 447). As the ALJ observed, Claimant's physicians defined the dizzy spells as non-physiologic and of undetermined etiology. (R. 22, 259, 263). Finally, as for Claimant's alleged migraine headache pain, with the exception of one instance of emergency treatment on 6 February 2003 (in which Claimant's headache pain was resolved with medication and without the necessity of admission), the ALJ noted the lack of significant headache symptoms in the record and the lack of restrictions imposed thereby. (R. 24, 207-08). Substantial evidence supports the ALJ's finding that Claimant's neck pain, migraine headaches and dizzy spells are not severe impairments.

Despite the thorough analysis and findings by the ALJ, Claimant contends her medical record "do NOT document the lack of objective findings for her impairments as the Decision insists. Rather, there are objective findings in each of the...[state agency] consultative examinations which support the conditions" described by Claimant." Pl.'s Mem. at 6 (emphasis

in original). However, as outlined above, the ALJ analyzed each of Claimant's alleged impairments and supported his findings with citations to the record. Moreover, despite Claimant's implication to the contrary, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *See Dyer*, 395 F.3d at 1211.

## II. The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, George West, M.D. Pl.'s Mem. at 8. This Court disagrees.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling

12

Case 4:08-cv-00014-FL   Document 22   Filed 10/01/08   Page 12 of 19

weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171,178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). The regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinion, and its consistency with the record. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The medical opinion at issue appeared in a letter and accompanying questionnaire dated 6 December 2005, wherein Dr. West indicated Claimant is incapable of employment due to recurrent bronchitis, bronchospasm, asthma and cervical fusion. (R. 28, 435-36). While acknowledging that Dr. West "has an established treating relationship" with Claimant (R. 28),

13

the ALJ accorded Dr. West's opinion minimal weight due to the lack of evidence supporting the opinion. *Id.* Substantial evidence supports the ALJ's decision to discount Dr. West's opinion. In particular, the ALJ justified his decision to accord decreased evidentiary weight to Dr. West's opinion based on the following: (1) Claimant "has sustained no residual limitations or restrictions due to cervical fusion;" (2) lack of evidence supporting a finding that Claimant's cervical fusion results in a severe impairment; and (3) medical records indicate Claimant's asthma is controlled with medication. *Id.*; *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. West's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. West's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. West's opinion.

**III. The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 10-13. This Court disagrees.

14

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)

15

> (7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records regarding her numerous alleged impairments, as detailed above.

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's alleged inability to get out of bed in the morning and inability to perform any activities with the exception of attending church each Sunday; (2) Claimant's back and headache pain, dizzy spells, alleged need for emergent asthma treatment every other month and her lack of depression on Sundays only; (3) Claimant's decision to continue smoking heavily despite suffering from asthma; (4) Claimant's use of inhalers and a nebulizer for asthma (which keep Claimant's asthma under control), Zoloft for depression and aspirin for pain; and (5) Claimant's use of a cane for back pain. (R. 27). The ALJ conceded that

Case 4:08-cv-00014-FL   Document 22   Filed 10/01/08   Page 16 of 19

reports prepared by Claimant's mother and sister were consistent with Claimant's allegations and testimony. (R. 27). However, the ALJ noted opinions of multiple sources of record who opined that Claimant exaggerates her pain, has a pain profile and demonstrates pain manners. (R. 27, 167, 201, 242). The ALJ observed further that Claimant receives no mental health counseling and found significant that she denied experiencing depression on Sundays, noting "[d]epression is not an illness that can be turned off in order to attend church services." (R. 27-28).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities considering Claimant's reliance on a cane, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion (R. 191-98, 274-81), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 28). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 9. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and Claimant's medical history. As discussed above, the ALJ's opinion provides a review of Claimant's medical records and statements by Claimant found to be credible. Moreover, while a state agency consultant found Claimant had the RFC to perform medium work, the ALJ only found Claimant capable of light work. The ALJ justified his light exertional finding based on Claimant's reliance on a cane, even though rehabilitation and neurological specialists questioned Claimant's need for a cane. (R. 27, 265). Finally, in compliance with S.S.R. 96-8p and as discussed in detail above, the ALJ

explained his resolution of the opinion by Claimant's treating physician and its lack of support and inconsistency with the medical evidence as a whole. (R. 28).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 1st day of October, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge